# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **R.B. Jr.**

**No. 19-0873** (Harrison County 18-JA-147-2)

**FILED**
**April 28, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother Y.B., by counsel Dreama D. Sinkkanen, appeals the Circuit Court of Harrison County's August 26, 2019, order terminating her parental and custodial rights to R.B. Jr.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Jenna L. Robey, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that she failed to identify the mechanism and perpetrator of the child's abuse, denying her motion for a post-adjudicatory improvement period, and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2018, the DHHR filed an abuse and neglect petition alleging that petitioner and the child's father engaged in domestic violence in the child's presence and that the child suffered extensive injuries while in their care. In April of 2019, the circuit court held an adjudicatory hearing, at which it heard evidence concerning the incident giving rise to the petition. Specifically, the evidence established that the father arrived at the home of J.M., the nonabusing mother of another child that is not at issue on appeal, to pick up petitioner. Upon

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

arriving, petitioner and the father "'tussl[ed]' over her cell phone." During the physical altercation, petitioner, intending to strike the father, instead stuck the child "in the head with [a] toy, leaving a mark on the child's forehead." According to the evidence, the fight continued outside. Ultimately, petitioner, the father, and the child returned to the home petitioner and the father shared. That evening, the altercation between the parents "reignited and became physical with [the father] choking, hitting[,] and sitting on [petitioner] multiple times." Both parents admitted that the altercation lasted all night and that the child was present.

The next morning the parents returned to J.M.'s home and took the child with them. Upon arriving, petitioner "ran into the home to call the police and report being held captive by [the father] throughout the night." According to petitioner, the father remained in the car with the child while she was on the phone with law enforcement, although she "would, periodically, look out the window of the home to the outside" where the father remained with the child. While petitioner was inside, the father removed the one-year-old child from the vehicle and placed him on the stoop of the home. During this period, the father "le[ft] the child unsupervised while . . . [he] was trying to gain access to the apartment." According to petitioner, while she was on the phone she heard the child cry, although she clarified during her testimony that she "did not hear a scream from the child or the type of cry that would indicate the child was hurt." She also testified that the child "was not upset at any time" during this incident and "den[ied] seeing or hearing anything that would indicate that [the child] had been injured." Both petitioner and the father further indicated that the child did not have any injuries prior to leaving petitioner's home.

Once law enforcement arrived on the scene, the father "noticed the child's leg which had abrasions over his ankle and approached a police officer . . . for the child to receive aid." After being transferred between hospitals, the child was ultimately diagnosed with a comminuted tibia fracture and a right heel fracture. Based on the testimony of a medical expert, "a comminuted tibia fracture is rare" and "[a] heel fracture is exceedingly rare and the combination of the two is even . . . rare[r]." According to the medical expert, "the type of force necessary for these fractures is a high energy high impact fracture requiring significant force onto the bone" which could occur, for example, in "a motor vehicle accident or a fall from a significant height, which for a child would be [five] to [ten] feet." The expert further testified that "the injury would be very painful and the child would have expressed a significant amount of pain," resulting in the parents having "immediately known the child was injured." According to the adjudicatory order, at the time law enforcement initially responded, petitioner "inquired [of law enforcement] how the injuries occurred" and did not "offer[] an explanation for the injuries sustained by the child." Only later did she "offer[] multiple explanations as possible causes of injury . . . such as the possibility of [the father] running over the child's leg, his foot becoming stuck in a hole near the step of [the] home, or being hit in the head by a toy." The adjudicatory order was clear, however, that petitioner "did not see any of these events occur." According to the medical expert, "the explanations offered did not match the injury pattern," which indicated that "the injury [was] a result of non-accidental trauma." Based upon this evidence, the circuit court found that petitioner failed to adequately supervise the child and engaged in domestic violence in his presence. Further, the circuit court found that the child "sustained traumatic injuries for which there has been no reasonable explanation offered" and that this "indicat[ed] that the child suffered non-accidental trauma." Despite being in the care, custody and control of petitioner and the father at

2

the time of the injury, "[t]he perpetrator of the abuse has not been identified." As such, the circuit court adjudicated petitioner as an abusing parent.

In May of 2019, the circuit court held a dispositional hearing, during which it found that petitioner's "failure to identify a mechanism of injury or to take responsibility for the injury of the minor child" was evidence that the conditions necessitating the petition's filing could not be corrected. Because the child was at risk for continued physical abuse, the circuit court found that termination of petitioner's parental and custodial rights was necessary for his welfare. Accordingly, the circuit court terminated petitioner's parental and custodial rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner asserts that the circuit court erred in finding that she "failed to identify the exact mechanism of injury . . . or to identify a perpetrator of those injuries," given that she informed medical personnel—and later testified—that she believed the father "slammed the child's leg in his vehicle door." According to petitioner, testimony from the medical expert below indicated that this was a possible mechanism of the child's injuries. Accordingly, petitioner asserts that the circuit court's rulings based upon this finding, including denial of her motion for an improvement period and termination of her parental rights, were in error.[3] We do not agree.

---

[2]The father's parental and custodial rights were also terminated, and the permanency plan for the child is either adoption in his current foster placement or, concurrently, permanent legal guardianship.

[3]Petitioner does not couch this assignment of error in terms of her adjudication being improper based upon this finding. Instead, as set forth above, petitioner argues that specific rulings predicated on this finding, such as the denial of an improvement period and termination

(continued . . . )

Central to petitioner's argument is her assertion that the circuit court erred in applying the following holding from this Court:

> "Parental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser." Syl. Pt. 3, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993).

*W. Va. Dep't of Health and Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996). In support of her argument, petitioner attempts to distinguish the facts of the underlying case from those in *Jeffrey R.L.* and *Doris S.* Unlike those cases, petitioner argues, she consistently indicated that she believed the father injured the child by shutting his leg in a car door, which the DHHR's medical expert recognized was a possible mechanism for the child's injury. Indeed, the following exchange occurred during the medical expert's testimony below:

> Q.    If the child had his leg and foot slammed in a car door would the person who did that know, or should they have known, that they had injured the child?
>
> A.    I believe so.
>
> Q.    Would that be a possible mechanism of the combination fractures that you saw this child with?
>
> A.    It's a possible mechanism.

However, petitioner ignores the fact that this was not the only possible explanation she provided below. According to the record, petitioner also suggested the father could have run over the child's leg with his vehicle or that the child could have suffered his injuries due to a hole in the front stoop of the home, an explanation that the medical expert expressly excluded as a cause. Further, petitioner fails to recognize that the medical expert testified that, absent any plausible explanation from either of the child's caregivers at the time of injury, his opinion to a reasonable degree of medical certainty was that the injury was the result of non-accidental trauma.

According to petitioner, the circuit court erroneously required her "to identify the exact mechanism of injury" to the child, in contravention of the cases cited above. This argument, however, misstates the circuit court's rulings below, as the circuit court required no such thing.

---

of her parental rights, were in error. Because petitioner does not challenge her adjudication as an abusing parent—even in regard to adjudication being based, in part, upon the finding that she failed to identify the perpetrator of the abuse—the appropriateness of adjudication is not at issue in this appeal.

Rather, the court explicitly found that petitioner's proffered explanations for the several ways the child's injuries could have occurred were insufficient to rebut the medical expert's ultimate conclusion that the injuries were the result of non-accidental trauma. The explanations petitioner presented required the circuit court to simply make a credibility determination on this issue, one that the circuit court resolved by rejecting petitioner's unsupported, speculative causes of injuries that she admitted she did not see occur. This Court will not go behind such credibility determinations on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). The resolution of this issue further requires acknowledgement that petitioner, as one of the two individuals with custody over the child at the time of his injuries, was just as likely to have inflicted the non-accidental trauma as was the father. Simply put, the circuit court was not wrong to find that petitioner's attempts to blame the father for the injuries when she could cite to no evidence to support her assertions—or even suggest a scenario that the medical expert could have accepted in order to rule that the injuries were the result of something other than non-accidental trauma—were not credible. While it is true that the medical expert admitted that shutting the child's leg in a car door could have caused such injuries, the expert nonetheless concluded that the explanations offered did not match the injury pattern and, as a result, the injuries were the result of non-accidental trauma. As such, we find no error in the circuit court's findings regarding petitioner's failure to identify the perpetrator of abuse.

Given that petitioner's two remaining assignments of error are predicated on accepting that the circuit court's findings regarding her failure to identify the perpetrator of the abuse or the manner in which it was inflicted were erroneous, we find that she is not entitled to relief in regard to either. Instead of belaboring petitioner's specific arguments, resolution of her assertions that the circuit court erred in denying her motion for a post-adjudicatory improvement period and that it erred in terminating her parental and custodial rights turn on the following:

> [I]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). The record clearly establishes that petitioner failed to acknowledge the conditions of physical abuse at issue. Indeed, the circuit court specifically found that petitioner's "failure to identify a mechanism of injury or to take responsibility for the injury of the minor child" was evidence that the conditions that necessitated the petition's filing could not be corrected. Given petitioner's failure to acknowledge the issue of the child's physical abuse, it is clear that denial of an improvement period and termination of her parental and custodial rights were appropriate.

This Court has held that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345

(2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). As set forth above, petitioner's failure to acknowledge the physical abuse to the child meant that any improvement period awarded to her would have been "an exercise in futility at the child's expense." *Timber M.*, 231 W. Va. at 55, 743 S.E.2d at 363. As such, we find no error in the circuit court's denial of petitioner's request for a post-adjudicatory improvement period.

Finally, pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts may terminate parental and custodial rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when termination is necessary for the child's welfare. According to West Virginia Code § 49-4-604(c), "'no reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." The evidence of petitioner's failure to acknowledge the existence of a problem conclusively establishes that petitioner could not correct the conditions of abuse and neglect because the problem was untreatable. Regardless of any evidence to which petitioner cites concerning her participation in services designed to correct any of the other conditions of abuse and neglect at issue, such as domestic violence or improper supervision, or the steps she took to separate from the father, her failure to acknowledge the child's physical abuse established that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future.

Additionally, because the circuit court specifically found that the child was at risk of further physical abuse, his welfare required termination of petitioner's parental and custodial rights. Contrary to petitioner's argument that she should have been entitled to a less-restrictive dispositional alternative, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, it is clear that the circuit court did not err in terminating petitioners' parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 26, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 28, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison